IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RODNEY D. COLLINS, on Behalf of
Himself and All Others Similarly Situated                    PLAINTIFF

v.                              No. 4:11-cv-761-DPM

SEECO, INC.; DESOTO GATHERING
COMPANY, LLC; SOUTHWESTERN ENERGY
PRODUCTION COMPANY; SOUTHWESTERN
ENERGY COMPANY; and SOUTHWESTERN
ENERGY SERVICES COMPANY                          DEFENDANTS


ORDER

On SEECO's application, the Arkansas Oil and Gas Commission

ordered pooling and integration of mineral interests in a section of Pope

County land.  Some of Rodney Collins's mineral interests (he owns others)

were included and subjected to a standard lease. Collins sues. He alleges that

SEECO violated the deemed lease by underpaying royalties, committed fraud,

and (along with four affiliated entities that Collins says are SEECO's alter

egos) violated the Arkansas Deceptive Trade Practices Act, and unjustly

enriched itself at his expense.  Collins seeks relief for himself and many

others:  He asks the Court to certify two state-wide classes of integrated

mineral interest owners who satisfy certain conditions.  Responding to what

could become a big case, SEECO and the other Defendants move to dismiss across the board. The briefing from both sides is comprehensive and helpful.

1.      The hub of the case, as the Court sees it today, is the contract claim against SEECO. The deemed lease obligates SEECO to pay Collins a specified percentage of "proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by [SEECO]." The lease defines "proceeds" as "the actual amount received by [SEECO] for the sale of said gas in an arm's length, non-affiliated transaction . . ." or, in the case of a transaction with an affiliated entity, "a price no less than that received from any other purchaser within the governmental township and range on which the lease is situated." *Document No. 1, at 16.*

Collins alleges that SEECO underpaid him proceeds by reducing the volume of gas in various particular ways and by charging post-production expenses. He also says SEECO, who dealt with its affiliated companies, did not do a proper or adequate other-purchaser inquiry. Taken as true, these facts state a plausible breach claim against SEECO. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

SEECO responds that Collins's royalty check stubs undermine his claim. This material does cast a shadow. But the Court would have to move beyond the complaint and incorporated materials, consider the related Davis and Ogden Declarations, and parse the rather complicated facts to determine if SEECO is right that no post-production deductions were actually made. The explanatory Declarations are outside the line on this motion, just as the check stubs, lease, and integration order are inside. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010). The reduced volume and pricing allegations, moreover, are untouched by the deductions point. The contract claim against SEECO goes forward.

There are two related points. First, Collins pleads, as a separate count, that SEECO violated its statutory obligation, ARK. CODE ANN. § 15-73-207, to develop and operate the leased estate in good faith as a prudent operator. The Court agrees with Defendants that there is no independent cause of action here. Whether SEECO operated prudently is an oil-and-gas specific version of the duty of good faith and fair dealing inhering in all contracts. This allegation survives only as part of the contract claim. Second, the request

for a declaratory judgment is probably suspenders over the belt of the contract claim. But there is no harm in leaving this request for relief in.

2.    Collins's quasi-contract claim asserting unjust enrichment by his lessee fails as a matter of law. The SEECO/Collins deemed lease specifically covers the royalties owed. The claim is on this contract, not in equity. None of the many exceptions applies; the general rule does. *Compare Glenn Mechanical, Inc. v. South Arkansas Regional Health Center, Inc.*, 101 Ark. App. 440, 445, 278 S.W.3d 583, 587 (2008), *with QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at 9–11, ___ S.W.3d ___, ____, *and United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 605–09 (8th Cir. 1999) (Arkansas law). Justice Newbern's opinion for the Court in the *Thomas Auto* case, contrary to Collins's argument, illustrates the governing law. The Crafts sought and got rescission of their contract for the damaged car. *Thomas Auto Co., Inc. v. Craft*, 297 Ark. 492, 497–98, 763 S.W.2d 651, 653–54 (1989).

As to the other Defendants, however, Collins has pleaded a plausible claim for unjust enrichment. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 1 & 2(2). Collins had no contract with these affiliates. He alleges that they worked in concert with SEECO to profit inequitably at his

expense.  For example, Collins says the Defendants devised the two-part scheme for selling gas to third parties as a means of retaining money that would otherwise have to be paid to Collins in royalties.  Taken as true, these allegations support a plausible unjust-enrichment claim against the non-contracting Defendants.

3.     Collins's alter-ego claim is puzzling.  Collins seems to want the Court to hold that these affiliated entities cannot structure their business as they choose under generally applicable law.  *Complaint ¶ 38*.  This is an astounding proposition.  To the extent Collins wants to argue that the Defendants' corporate structure is part of a fraud, he may of course do so. There is a plausibility problem too:  sharing some officers and directors and an agent for service is as consistent with affiliated but separate corporate existence as it is with being an alter ego.  Nowhere does Collins allege exactly how much overlap in corporate management exists or that one Defendant so controls the others that the law requires treating all these corporate persons as one.  See generally the many authorities cited at page 18 of Defendants' opening brief, *Document No. 7*, on the hill Collins must climb.  The allegations in this count are more conclusions than facts.  (Collins should also consider

the dynamic between his alter-ego theory and his other claims:  If all the Defendants are one, for example, they are all a party to the deemed lease, and no unjust-enrichment claim will exist.) Collins's alter-ego theory is dismissed without prejudice to repleading plausible allegations.

4.     The motion to dismiss is denied on the fraud count, which runs only against SEECO.  The Court sees no Rule 9 problem.  Collins's point is that SEECO's checks (and stubs) represented the key fact: "This is the amount we owe you."   Collins alleges that SEECO had made many improper deductions to arrive at the net, and each check was therefore less than SEECO actually owed under the lease. Collins's pleading covers "the time, place, and contents" of the alleged misrepresentation, who made it, and what SEECO obtained (really, retained) as a result. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).  This suffices for now.  Collins's fraud claim is particular enough and plausible enough to go forward.

5.     The ADTPA claim survives too, but it needs clarification. SEECO's contrary argument reads the regulatory exclusion, ARK. CODE ANN. § 4-88-101(3), too broadly.  The Commission's integration order is not in Collins's sights, how SEECO paid royalties is.  Collins says the Defendants

-6-

engaged in several specific deceptive trade practices, including self-dealing to artificially lower royalty payments, improperly charging post-production expenses, making improper representations about the amount of royalties owed via royalty checks, and failing to pay royalties on gas used for compression, dehydration, marketing, and gathering. These allegations make a plausible case that the Defendants engaged in deceptive business practices within the Act's catch-all provision and that Collins lost royalty payments as a result.  ARK. CODE ANN. § 4-88-107(a)(10); *Forever Green Athletic Fields, Inc. v. Lasiter Construction, Inc.*, 2011 Ark. App. 347, at 17–18, ___ S.W.3d ___, ___.

The murkiness is in who did what.  Given the Court's rejection of Collins's implausible alter-ego allegations, Collins may not rest on his generalized statement that all the Defendants violated the Act. Particulars are needed — unless Collins repleads plausibly on the alter-ego point. The motion to dismiss on the ADTPA claim is granted with leave to amend.

6.      The Court sees no basis for injunctive relief.  Collins's treble-damages claim under ARK. CODE ANN. § 15-74-708(b) is viable, though opaque.  One has to puzzle through the incorporated allegations to discern which of the named affiliate-Defendants is the purchaser at risk of these

damages. Collins should add some clarity when he repleads. And there is a lurking problem: If the purchaser is SEECO's alter ego, was there a purchase? Can SEECO sell something to itself?

7.     Having gotten deeper in the case, the Court concludes that it needs to fine tune the schedule. No further briefing is necessary. But a conference with counsel would be helpful. The court will schedule one soon. The Final Scheduling Order, *Document No. 23*, is vacated. Counsel should nonetheless hold the October 2013 trial date. No formal discovery until the Court issues an Amended Final Scheduling Order.

* * *

Motion to dismiss, *Document No. 6*, mostly denied but granted in part with leave to amend. Amended complaint due 29 June 2012.

So Ordered.

D.P. Marshall Jr.
United States District Judge

15 June 2012